[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11218

_____

D.C. Docket No. 6:17-cr-00285-PGB-GJK-1

UNITED STATES OF AMERICA,

                                                    Plaintiff - Appellee,

versus

DONATO AMAYA-RIVAS,

                                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 7, 2019)

Before JORDAN, GRANT, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Donato Amaya-Rivas ("Amaya-Rivas") appeals his conviction for illegally re-entering the United States after having been removed, in violation of 8 U.S.C. § 1326(a), (b)(1), as well as his above-guideline sentence of 48 months' imprisonment.  Amaya-Rivas contends that he did not enter his guilty plea knowingly and voluntarily because the district court failed to advise him of the consequences of his guilty plea pursuant to Federal Rule of Criminal Procedure 11, and there was not a factual basis to support the guilty plea.  He argues that his sentence is both procedurally and substantively unreasonable and that his sentence violates the Fifth and Sixth Amendments because the district court imposed a sentence above the statutory maximum based on facts not proven to a jury beyond a reasonable doubt or admitted by him.

Our review of the record reveals no error by the district court in sentencing Amaya-Rivas to the above-guideline sentence of 48 months, and we summarily affirm his sentence.  Although the government's brief argued waiver, it later filed a 28(j) letter conceding that "Amaya-Rivas has not waived his right to challenge [the] district court's order based on the magistrate judge's findings and recommendations."  May 29, 2019 Ltr., Dkt. 40, No. 18–11218.  We also agree with the government that Amaya-Rivas cannot show that any error during the Rule 11 plea colloquy affected his substantial rights; therefore, we affirm his conviction.

2

## I. BACKGROUND

In October 2017, Border Patrol agents encountered Amaya-Rivas at a gas station in Florida.  After the agents checked his record and fingerprints, they discovered that he had an alien file, was born in and was a citizen of Mexico, was not a citizen of the United States, and had previously been ordered removed from the United States in 1999, 2004, 2005, and 2014.  His criminal record showed that he had felony convictions in 1999 and 2014 for possession of controlled substances.  Moreover, he admitted to law enforcement officers that he was a citizen of Mexico, that he had been previously deported, and that he did not have any status in the United States.

In 2017, a federal grand jury charged Amaya-Rivas with illegally re-entering the United States after having been removed, in violation of 8 U.S.C. § 1326(a), (b)(1).  The government filed its factual basis enumerating the elements of the offense.  In its filing, the government stated that the maximum possible penalty was 10 years' imprisonment.  The day after the government filed its factual basis, a magistrate judge conducted a change of plea hearing.  The judge asked Amaya-Rivas if he understood what the government must prove beyond a reasonable doubt in order to establish his guilt of the charge and if the government's notice of the possible maximum sentence was provided to and translated for him.  Amaya-Rivas

3

answered in the affirmative.  (R. Doc. 44, p. 4.)  The judge read the elements contained in the government's factual basis to him and asked if he understood it and whether he had any questions.  Amaya-Rivas responded that he understood and had no questions.  The judge asked if anyone had pressured him into pleading guilty, and Amaya-Rivas responded no and that he had discussed the consequences of pleading guilty with his attorney.  The judge discussed the penalties that Amaya-Rivas could receive if he pled guilty, and the judge asked him if he understood that if he pled guilty, he was waiving all his rights associated with a trial.  Amaya-Rivas responded in the affirmative.

After these questions, the colloquy continued:

THE COURT:    Ms. Guzman, have you and your client reviewed the factual basis and the notice for accuracy?

MS. GUZMAN:    Yes, Your Honor, we have.  The factual basis, of course, is on pages two, three, and four of the Notice of Essential Elements.  We have reviewed it in Spanish, and we have no objection.

THE COURT:    All right.  Let me address that with your client then.  Sir, have you reviewed the factual basis attached that is in the notice at pages two, three, and four for accuracy?

AMAYA-RIVAS: Yes.

THE COURT:    Do you believe that that factual basis is true and accurate?

AMAYA-RIVAS: Yes.

4

THE COURT:     Sir, do you want to plead guilty to the charge you're facing because you are guilty, or is there some other reason?

AMAYA-RIVAS: No.  I am guilty.

THE COURT:     All right.  You admit that you did re-enter the United States this last time voluntarily.  Is that correct?

AMAYA-RIVAS: Yes.

THE COURT:     And prior to your re-entry into the United States, you had not requested the consent of any U.S. authorities for you to apply for re-admission.  Is that correct?

AMAYA-RIVAS: Correct.

. . .

THE COURT:     All right.  Counsel for the parties, are there any additional matters you do want the Court to address?  Furthermore, are you aware of any legal reason why the Court should not accept the defendant's desire to plead guilty?

Both the government's attorney and Amaya-Rivas's attorney answered "No."  When asked by the judge how he pled, Amaya-Rivas answered "Guilty." (*Id.* at 8–10.)  Following the guilty plea hearing, the magistrate judge issued an R & R recommending that the district court accept Amaya-Rivas's plea of guilty.  (R. Doc. 28.)  Amaya-Rivas filed a motion expressing no objections to the R & R.  The district court accepted his plea of guilty, adjudged him guilty, and later sentenced him to 48 months' imprisonment.  (R. Doc. 48 at 15.)

## II. DISCUSSION

5

Amaya-Rivas contends that his conviction is unconstitutional because his guilty plea was not made knowingly and voluntarily.  He acknowledges that he did not object to the R & R that recommended the district court accept his guilty plea.  Therefore, we review his contentions for plain error.  *See United States v. Brown*, 586 F.3d 1342, 1345 (11th Cir. 2009) ("Because [defendant] did not object to the Rule 11 colloquy in district court, we review for plain error.").  To establish plain error, Amaya-Rivas must show that there was an error, that was plain, and that affected his substantial rights.  *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).  When a defendant asserts that the district court committed plain error under Rule 11 and seeks reversal of his conviction after pleading guilty, the defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 1020 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004)).  Even if a defendant establishes clear, prejudicial error, the error must still "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings" in order for the court to remedy the error.  *United States v. Ternus*, 598 F.3d 1251, 1254 (11th Cir. 2010) (quoting *Brown*, 586 F.3d at 1346).  The burden is on the defendant to show that there was an error and that it did affect his substantial rights.  *United States v. Margarita Garcia*, 906 F.3d 1255, 1266–67 (11th Cir. 2018) (explaining the difference

6

between harmless error and plain error review), *cert. denied*, ___ U.S. ___, 139 S. Ct. 2027 (2019).   The reviewing court may consider the entire record to determine whether an error affected the defendant's substantial rights.  *Id.* at 1350. Moreover, statements made under oath by a defendant during a plea colloquy receive a strong presumption of truthfulness.  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

In pertinent part, Rule 11 lists the following rights that the court must review with a defendant pleading guilty and must determine that a defendant understands:

> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
>
> (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
>
> (C)  the right to a jury trial;
>
> (D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;
>
> (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
>
> (F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere.

7

Fed. R. Crim. P. 11(b)(1)(A)-(F).  Although the district court is obliged to inform the defendant in words or in substance about these rights, we have noted that the rule does not say that a court's only means of compliance is to read the specified items verbatim.  *Monroe*, 353 F.3d at 1351.  "Instead, in Rule 11 proceedings, matters of substance, not form, are controlling."  *Id.*

In evaluating whether a Rule 11 error substantially affected a defendant's rights, we examine Rule 11's three "core principles," which ensure that: (1) the guilty plea is free of coercion; (2) the defendant understands the nature of the charges against him; and (3) the defendant understands the direct consequences of the guilty plea.  *Moriarty*, 429 F.3d at 1019.  "A district court's failure to address a core concern of Rule 11 constitutes plain error."  *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000).   Furthermore, we will consider "whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty."  *United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990).

Amaya-Rivas relies on our prior decision in *United States v. Hernandez-Fraire*, to support his claim that he did not enter his guilty plea knowingly and voluntarily and that his conviction should be reversed.  In that case, we found that the district court violated Rule 11(c)(3) by not explicitly informing the defendant

8

of his right to plead not guilty, his right to confront and cross-examine adverse witnesses at trial, his right against compelled self-incrimination, and his right to the assistance of counsel at trial. *Hernandez-Fraire*, 208 F.3d at 950. Acknowledging that the district court failed to ask all the questions contemplated by Rule 11, the government insisted that the district court nonetheless addressed the core concerns underlying Rule 11. *Id.* The government also posited that the defendant's extensive criminal history familiarized him with the criminal justice system and the rights inherent in the right to a jury trial and because of this familiarity, he understood the consequences of pleading guilty. *Id.*

In rejecting the government's assertions, we held "that where the district court fails to inform the defendant of his Rule 11(c)(3) rights and nothing in the record indicates that the defendant is aware of these rights, the government cannot rely on the defendant's past criminal background to prove that he knows and understands these rights." *Id.* at 951. Our examination of the plea colloquy revealed that Hernandez-Fraire did not understand his rights. Specifically, when the court asked if anyone had threatened him to plead guilty, Hernandez-Fraire answered "I really don't know about this plea, because I don't know what my rights are." *Id.* This response should have prompted the district court to ensure that Hernandez-Fraire was aware of his rights, but it did not. Thus, we held that

9

the district court committed plain error by failing to address a core concern of Rule 11. *Id.*

Our review of the record shows a material difference between Amaya-Rivas's responses during his Rule 11 colloquy and Hernandez-Fraire's comments and answers during his Rule 11 colloquy. Unlike Hernandez-Fraire, Amaya-Rivas never informed the magistrate judge that he did not know or understand his rights. Rather, Amaya-Rivas acknowledged that he discussed with his attorney the consequences of pleading guilty and that he understood that by pleading guilty he would be waiving his rights associated with a trial. Thus, unlike Hernandez-Fraire, there is evidence in the record indicating that Amaya-Rivas was "aware of these rights." *Id.* at 951. The fact that a defendant cannot point to evidence affirmatively demonstrating ignorance of his rights does not necessarily end the matter. A "silent record" will warrant reversal, so a defendant need not point to evidence of ignorance. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Rather, the question is whether there is *any* evidence showing that the defendant understood his rights, and, if there is, the record is not silent, and reversal is not required.

Thus, our review of the record confirms that any errors or omissions during the Rule 11 colloquy did not affect Amaya-Rivas's substantial rights. Although

10

the magistrate judge did not read the rights contained in Rule 11 verbatim to Amaya-Rivas, the magistrate judge nonetheless ensured that his guilty plea was not coerced, informed him of the charges against him and the elements that the government would have to prove if he proceeded to trial, and informed him of the penalties he would be facing if he was found guilty by a jury.  Thus, the district court satisfied the three core principles of Rule 11.  *See Moriarty*, 429 F.3d at 1019.[1]

Assuming *arguendo* there was error, Amaya-Rivas has not shown how the error affected his substantial rights.  He has not established that he would not have pled guilty had the court not committed the purported error.  Moreover, he agreed to the factual basis that the government would have to prove if he proceeded to trial.  Accordingly, we affirm Amaya-Rivas's conviction of being unlawfully in the United States after having been previously deported, in violation of 8 U.S.C. § 1326.

AFFIRMED.

---

[1] Although our court has stated that the district court does not have to follow the Rule 11 colloquy verbatim, we encourage the district courtsP to utilize the Rule 11 "script" when conducting guilty plea hearings.  A district court should never be reversed for a Rule 11 violation.  Moreover, the government attorney and defense attorney have an obligation to notify a district court if it mistakenly omits a core concern from the Rule 11 colloquy.  The Rule 11 "script" exists for a reason, and the district courts should follow it closely to avoid any errors. *See* Federal Judicial Center, *Benchbook for U.S. District Court Judges* (March 1, 2013), https://www.fjc.gov/content/bench book-us-district-court-judges-sixth-edition-0.